# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 2:19-CR-96 |
| ) | |
| ANTHONY NATHAN SMITH ) | |

## OBJECTIONS TO REPORT AND RECOMMENDATION
## BY ANTHONY NATHAN SMITH

Comes Anthony Nathan Smith, by and through counsel, pursuant to Rule 59(b)(2) of the Federal Rules of Criminal Procedure, and respectfully interposes objections to the Report and Recommendation entered on October 19, 2020 [Doc. 510], as follows:

**I.      BACKGROUND INFORMATION**

On June 19, 2020, Mr. Smith filed his Motion No. 1 to Suppress Evidence Obtained in Violation of the United States Constitution [Doc. 327], challenging stop, detention and search of vehicle in which he was a passenger by law enforcement officers on February 7, 2019, without a warrant. In the Memorandum [Doc. 328] in support of that Motion, Mr. Smith asserts that "[T]he prosecution has the burden of proving that the officers making the stop and detention of a vehicle have either probable cause to believe that a traffic violation by the driver thereof has occurred, or a

-1-

reasonable suspicion based upon specific and articulable facts of an ongoing crime being committed by an occupant thereof." [Page ID #: 620]. In that motion Mr. Smith asserts that law enforcement officers who stopped the vehicle in which he was a passenger on February 7, 2019, did not have probable cause to stop that vehicle, and insists that all personal property discovered as a result of any such search following that stop on February 7, 2019, "must be suppressed as fruits of the illegal stop and detention of said vehicle." [Page ID #: 616].

Mr. Smith also filed his First Motion to Dismiss Count Six of the Indictment Because of the Destruction by Law Enforcement Officers of Critical Evidence Violating the Defendant's Right to Due Process [Doc. 329]. This motion addresses the Government's destruction and consequent inability to produce the audio and video recordings of the stop and search of the vehicle in which Mr. Smith was a passenger on February 7, 2019, created by the dash camera on a patrol car and the microphone worn by one of the officers involved in the stop, which Mr. Smith insists contains evidence necessary to protect his right to due process in defending against this substantive offense, and which one of the officers testified under oath that he would preserve.

Mr. Smith filed his Second Motion to Dismiss Count Six of the Indictment Because of the Destruction by Law Enforcement Officers of Critical Evidence Violating the Defendant's Right to Due Process [Doc. 336]. In that motion Mr. Smith asserts that the law enforcement officers violated his right to due process by failure to retain and preserve as evidence the Acura automobile in which he was a passenger on February 7, 2019, and to retain the contents of that vehicle, and the backpack located in that vehicle from which officers allegedly removed methamphetamine with

-2-

which he is charged in Count Six of the Indictment, because it contained exculpatory evidence.

Mr. Smith also filed his Second Motion to Suppress Evidence in Violation of the United States Constitution [Doc. 338], challenging the stop and detention of him while riding his motorcycle on October 9, 2018, and the consequent search of a backpack he had removed from his person. In that motion Mr. Smith challenges the credibility of the testimony of the reasons given for the stop and subsequent detention of the motorcycle he was riding on this occasion, and the search on that occasion of a backpack he had been wearing.

A hearing on the four (4) aforesaid motions by Mr. Smith was conducted before the Magistrate Judge on August 27, 2020, and September 9, 2020, and thereafter, on October 19, 2020, there was issued a Report and Recommendation that said motions of Mr. Smith be denied. [Doc. 510].

## II.    SPECIFIC OBJECTIONS

A. The prosecution failed to meet its burden of proof by sufficient credible evidence to support the finding on page 9 of the Report and Recommendation law enforcement had probable cause to believe that a traffic violation was being committed by the driver of the vehicle in which Mr. Smith was a passenger on February 7, 2019.

B. The prosecution did not introduce sufficient evidence of information from a Title III

wiretap about the Acura vehicle in which Mr. Smith was a passenger on February 7, 2019, to provide a constitutionally permissible reason for the stop and detention of that vehicle by law enforcement officers.

The testimony at the evidentiary hearing in this case demonstrates that following the stop and search of the Acura vehicle in which Mr. Smith was a passenger on February 7, 2019, Mr. Smith and the driver of that vehicle were arrested on state charges, and before he was indicted in this Court on charges for what was found in that vehicle, a preliminary hearing was held in the state court. One of the persons who testified at that preliminary hearing was Officer Cole Stevens, who also testified at the evidentiary hearing before the Magistrate Judge in this case.

During his testimony at the hearing in this case before the Magistrate Judge, Officer Stevens admitted that at the preliminary hearing he testified that prior to seeing the Acura vehicle on the evening of February 7, 2019, he had not received any information that caused him to be on the look out for that particular vehicle. On the other hand, at the evidentiary hearing before the Magistrate Judge in this case, both Officer Stevens and Deputy Voss testified that they had been listening to police radio communications, and communicating with other officers that evening regarding specific activities by the Acura vehicle that created some suspicion that it might have been involved in a drug transaction. They also testified that each of them on that evening had been requested by other law enforcement officers to station their vehicles along the highway in an effort to locate and stop the Acura vehicle in which Mr. Smith was a passenger, even though they did not know the identity of any of the occupants of that vehicle. This revelation, of course, was completely

contrary to the testimony of Officer Stevens when testifying under oath at the preliminary hearing that he had no information at the time he parked along the highway that evening that would have caused him to be looking for this particular vehicle.

Officer Stevens did not provide any testimony at the hearing before the Magistrate Judge in this case about what he had learned from listening to radio communications from other law enforcement officers about what they had observed about the activities of the Acura vehicle, and certainly did not suggest that whatever had been observed about the Acura vehicle and related to him would in any way give him a constitutionally permissible reason for stopping and detaining the Acura vehicle. Instead, after testifying as to some body movement he noticed observed by the driver of the Acura vehicle as it passed by his cruiser parked in a parking lot beside the highway at approximately 9:00 p.m. on February 7, 2019, he pulled out to follow the vehicle when he noticed it made a sharp turn from the highway into the Wendy's parking lot. He testified that he did not follow the Acura into the Wendy's parking lot, but instead drove on by to a nearby parking lot where he stopped to obtain information about the ownership of that vehicle from its license plate number. It was during this period of time that he admitted that the Acura vehicle was out of his sight.

After learning that the vehicle was owned jointly by a male and a female, Officer Stevens then claims that he learned that the driver's license of the male co-owner was either revoked or suspended. Officer Stevens then claims that he obtained through his exclusive access to law enforcement records he was then able to view a copy of the driver's license of the male co-owner of the Acura vehicle.

Even though Officer Stevens had only had an opportunity to observe the driver of the Acura vehicle for a very short instance as it passed by his police cruiser parked in a parking lot along the side the highway at 9:00 p.m. on February 7, 2019, and then to follow that vehicle for only a short distance before it pulled into a Wendy's parking lot, he testified that the person driving that vehicle looked similar to the person identified in the driver's license he had viewed for the male co-owner of the vehicle. Nevertheless, Officer Stevens could not recall the height or any other identifying features or information from his observation of the driver's license of the male co-owner of the Acura vehicle. Indeed, Officer Stevens could not testify as to a single aspect of the physical appearance or other specific information he observed on the driver's license of the male co-owner of the Acura vehicle that caused him to believe that it was the same person he had seen driving the Acura vehicle after observing that person for only a very short period of time, during which he was primarily behind the vehicle after dark.

In addition, it is the recollection of the undersigned counsel, that Officer Stevens conceded that while the vehicle and its occupants were out of his sight, he learned that Task Force Officer Thompson, who apparently had also been surveilling this vehicle, had seen the driver of the vehicle leave the vehicle and go into Wendy's. Nevertheless, he testified that he did not rely upon any information obtained from the observations of Task Force Officer Thompson about the physical characteristics that he observed about the driver of the Acura vehicle in making his determination that that person looked similar to the person who appeared on the driver's license he observed of the male co-owner of the Acura vehicle.

Even though the testimony of Officer Stevens had been seriously impeached by reason of his former sworn testimony at the preliminary hearing when he had testified that he had received no information about the Acura vehicle before observing it drive by him on the highway on the evening of February 7, 2019, the prosecution offered nothing to cooberate the testimony of Officer Stevens. Obviously, with its access to law enforcement information and data, the prosecution could have offered a copy of the driver's license of the male co-owner of the Acura vehicle, and a copy of the photograph taken of the driver of the Acura vehicle at the time of his arrest (which turned out not to be the male co-owner of the Acura vehicle), but the prosecution chose not to provide any evidence with which the Court could compare the physical evidence with the unsupported conclusions by Officer Stevens, or cooberate his testimony in any way.[1]

The Sixth Circuit Court of Appeals has recently reminded us that a warrantless search or seizure is constitutionally permissible only if it falls within a specific exception to the warrant requirement. As the Court stated in United States v. Fletcher, 2020 U.S. App. LEXIS 33688 (*4-5):

> The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV "The ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Riley v. California, 573 U.S. 373, 381-382, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 395, 403, 126 (S. Ct. 1943, 164 L. Ed. 2d 650 (2006)). And "reasonableness generally requires the obtaining

---

[1] The driver's license of the male co-owner of the Acura and the status of his driver's license are not public records that are available to Mr. Smith and his counsel.

of a judicial warrant." Id. at 382 (quoting Vermonia Sch. Dist. 47-J v. Acton, 515 U.S. 646, 653, 115 S. Ct. 2386 132 L. Ed. 564 (1995)). If there is no warrant, then "a search is reasonable only if it falls within a specific exception to the warrant requirement." Id.

The Sixth Circuit has also long held that to justify a warrantless stop and seizure the burden of proof is that of the government. As stated by the Court in United States v. Turner, 2003 U.S. Dist. LEXIS 14080 (2003):

> Because the stop and seizure of Turner and the gun was without a warrant, the burden of proving that the stop and the seizure was lawful under the Fourth Amendment is on the government. United States v. Winfrey, 915 F. 2d 212, 216 (6th Cir. 1990) (citing Florida v. Royer, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983)).

Id. *4.

Mr. Smith submits that given the impeachment of Officer Stevens by reason of his previous sworn testimony, and the failure of the prosecution to offer any evidence to cooberate any of his testimony concerning his reasons for believing that the male co-owner of the Acura was the driver of the Acura on this occasion, or even that the male co-owner's license was revoked or suspended, the government failed to provide sufficient credible evidence to meet its burden of proof in this case.

The decision in the Report and Recommendation relies heavily on the decision in Kansas v. Glover, 140 U.S. 1183, 206 L. Ed. 2d 412 (2020), but that is a case that was decided solely on the basis of stipulated facts, and it is submitted that this is one reason the Court stated: "We

emphasize the narrow scope of our holding." Id. at 1191.

While the prosecution may now seek to justify Officer Stevens' stop and detention of the Acura vehicle in which Mr. Smith was a passenger based upon the information obtained from the Title III wiretap of some third persons, that information was never introduced at the evidentiary hearing in this case. The only information pertaining to that wiretap is found in some unauthenticated purported transcripts thereof that are merely attached to the Government's response [Doc. 388] to Mr. Smith's Motion No. 1 to Suppress. Not only was no witness called to testify as to the authenticity of those transcripts at the evidentiary hearing, there was no effort to introduce those transcripts at the evidentiary hearing, nor was there any testimony as to what, if any portion thereof, was communicated to Officer Stevens before he stopped and detained the Acura vehicle in which Mr. Smith was a passenger.

>C. Officer Cole Stevens offered no explanation of why he did nothing to preserve the video and audio made by the dash cam and microphone during the search of the Acura vehicle on February 7, 2019, even though he assured Mr. Smith and his co-defendant in his sworn testimony at the preliminary hearing that he would preserve that evidence.

>D. Contrary to the finding in the Report and Recommendation the exculpatory value of these recordings would have been readily apparent to the officers.

-9-

Case 2:19-cr-00096-JRG-CRW   Document 550   Filed 10/30/20   Page 9 of 19   PageID #: 1866

E. There was no credible testimony or other admissible evidence submitted by the prosecution at the evidentiary hearing in this case as to why such video and audio recordings could not be provided to Mr. Smith's counsel.

F. It was bad faith to allow the destruction of the video recordings after leading Mr. Smith to believe Officer Stevens would preserve those recordings and then he did nothing to do so while the recordings were apparently destroyed.

Deputy Andrew Voss, who arrived at the scene soon after Officer Cole Stevens had stopped and detained the Acura vehicle in which Mr. Smith was a passenger on February 7, 2019, testified that after Mr. Smith and the driver of the vehicle were removed from the vehicle he turned on the dash cam of his police vehicle that would also activate a microphone worn by him. Officer Cole Stevens admitted that he had testified at the preliminary hearing conducted soon after the arrest of Mr. Smith and the driver of the Acura vehicle on state charges that he was aware of the existence of such video and audio recordings, and he assured Mr. Smith's counsel, when testifying under oath at that preliminary hearing, that he would preserve those recordings.

The Indictment in this case in this Court occurred on July 9, 2019, and in Count Six thereof the substantive charge that on February 7, 2019, Mr. Smith and another co-defendant did possess with the intent to distribute more than 50 grams of methamphetamine. Of course, that is one of the same charges for which Mr. Smith and the driver of the Acura vehicle were jointly charged in state court following their arrest on February 7, 2019. There is no evidence to suggest that those

-10-

recordings did not continue to exist on the date of this Indictment, and certainly could have been taken into the custody of the United States Attorney's Office on or before that date.

While Officer Stevens testified, over objection by counsel for Mr. Smith, that he had learned that the recordings in question had been lost by reason of an occurrence in January of 2020, he certainly had no firsthand knowledge of what had occurred and no foundation was provided as to any expertise he might have about how that destruction happened.

After the hearing in this case on August 27, 2020, which was the date scheduled for hearing on Mr. Smith's motions pertaining to the events of February 7, 2019, the prosecution did file with the Court on September 1, 2020, a Supplement [Doc. 453] to its Response in opposition to Mr. Smith's Motion to Dismiss Count Six, without any explanation whatsoever, and which consists entirely of an unsigned and certainly unauthenticated document purporting to explain how information was allegedly destroyed or lost on a server at the Hamilton County Sheriff's Office. Mr. Smith's counsel filed on September 2, 2020 a Reply [Doc. 455] to this supplemental filing asserting that it could not be considered by the Court because it was not offered into evidence at the evidentiary hearing in this case, and certainly such an unsigned and unauthenticated document was not otherwise admissible. Nevertheless, the Magistrate Judge apparently considered such Supplement because there appears in the Report and Recommendation at page 14 thereof, that: "While the court acknowledges the budgetary constraints faced by the HCSO which are referenced in its filing, that does not fully excuse the circumstances leading to the loss of the recordings at issue."

-11-

After Officer Stevens testified at the state court preliminary hearing that he would preserve those recordings, the prosecution in this case has still not provided any reason as to why those recordings were not timely provided to Mr. Smith's counsel following his Indictment on the same substantive charge in an Indictment returned in this Court on July 9, 2019. Indeed, the Magistrate Judge even made the finding on page 14 of the Report and Recommendation that: "Of equally great concern is the fact that the initial discovery deadline in this matter was in November, 2019. Had the recordings been timely provided to Defendant's counsel in this action, the evidence would not have been lost in the server crash, which did not occur until January, 2020."

Contrary to the finding on page 13 of the Report and Recommendations, the exculpatory nature of the recordings should have been apparent to the officers. After all, even the officers conceded that during the time the camera and microphone were recording what occurred, Mr. Smith announced that he had no knowledge of the presence of the methamphetamine in the backpack in the rear seat area of the vehicle. While the Report and Recommendation finds that this is a fact that has been admitted by Deputy Voss, this still does not negate the obvious exculpatory value of a recording of this, but instead highlights the exculpatory nature of what would be on the recordings. Mr. Smith should be entitled to demonstrate to the jury, from a recording that was available for this incident at the time of his Indictment, that would show precisely how emphatically and sincerely he made that statement at that time. Now, of course, he will be denied that opportunity. Because of the obvious exculpatory nature of those recordings under these circumstances, Mr. Smith should not be required to show that these recordings were destroyed by reason of the bad faith of the officers. After all, it was not only the express obligation of the officer

in this case to preserve such recordings as he promised under oath at the preliminary hearing he would do, but it was also the obligation of the prosecution in this case to preserve those recordings as a part of its duty to assure Mr. Smith has a fair trial in this case.

On the other hand, why would it not be bad faith to specifically promise under oath to preserve the recordings and then do nothing to do so? Why is it not bad faith to concede that you specifically agreed to preserve the videos, and after doing nothing to do so, and after they are destroyed offer no explanation of why you did nothing to prevent that from happening? It is common knowledge that they only safe way to preserve electronically stored information is to make a copy of it and store it on another device, such as a flash drive or a DVD. If Officer Stevens had done that, then a copy of those recordings would now be available. Of course, he could also have downloaded it into another computer hard drive or upload it to cloud storage. By not doing anything to preserve those recordings, even the simplest of things everyone does to prevent the loss of electronically stored data, after testifying under oath to do so, is surely bad faith on the part of Officer Stevens.

In addition, the prosecution has offered no reason why it did not, after indicting Mr. Smith on July 9, 2019, on the substantive charge of possession of methamphetamine on February 7, 2019, and then do nothing to preserve all of the evidence, including the recordings at issue. There is no doubt that it had a duty to provide such evidence in discovery. It provided discovery without preserving or providing those recordings, and instead allowed them to be destroyed that is surely bad faith as well. It has now become more likely that dash cam and body cam videos exist in every case.

Why do we have to repeatedly argue about whether they contain exculpatory evidence and how and why they were destroyed? Like all other discovery materials, should there not simply be an obligation of the prosecution to secure and preserve them?

Instead of holding the prosecution accountable for its failure to timely provide copies of such recordings to counsel for Mr. Smith, the Report and Recommendation suggests that Mr. Smith is at fault for not taking steps to somehow secure a copy thereof after learning of the existence of such recordings at the time of his preliminary hearing. Of course, the Court has already found Mr. Smith to be indigent, by reason of which he was appointed an attorney to represent him in this Court but he has also been continuously incarcerated in either state or federal custody since his arrest on February 7, 2019. By the same token, after hearing the sworn testimony of Officer Cole Stevens at the preliminary hearing, promising that he would preserve those recordings, there is no reason Mr. Smith had to believe that he needed to do anything else to prevent those recordings from being destroyed, assuming he had the ability as an indigent and incarcerated person to do so.

      G.      The prosecution failed to provide sufficient credible evidence of why neither the vehicle nor the white backpack in which the methamphetamine was allegedly found on February 7, 2019, were not preserved by law enforcement officers.

      H.      Contrary to the finding in the Report and Recommendation the exculpatory value of the white backpack and its contents as well as the Acura vehicle

-14-

Case 2:19-cr-00096-JRG-CRW Document 550 Filed 10/30/20 Page 14 of 19 PageID #: 1871

itself and its contents in the back seat area should have been readily apparent.

The undisputed evidence is that when officers searched the Acura vehicle in which the Mr. Smith was a passenger on February 7, 2019, the rear seat area thereof was full of junk and other items. That would demonstrate that a passenger in that vehicle in the front seat might not have even noticed a backpack located in the rear seat area. Therefore, it should be obvious to anyone that the amount of articles and debris in the rear seat area was potentially exculpatory evidence corroborating Mr. Smith's claim at the time that he had no knowledge of the presence of any such item in the area of the rear seat. Likewise, the potential exculpatory value of the white backpack in which the Officers allegedly found the methamphetamine with which Mr. Smith is charged in this case should also have readily understood the exculpatory value of that item, which admittedly contained other items inside the backpack. Obviously, if those other items could be identified, and it could be demonstrated that Mr. Smith never possessed or handled those items, through DNA testing or otherwise, that would be evidence that could be used to convince the jury that Mr. Smith was unaware of the contents of that white backpack as he asserted at the time. In addition, of course, if the white backpack, if available, could be tested for fingerprints or DNA evidence that would demonstrate that Mr. Smith never had possessed or handled the white backpack, that would be exculpatory evidence from which a jury could find that he is not guilty of the charge of possession of the white backpack or its contents.

Nevertheless, the undisputed testimony of Officer Cole Stevens and Deputy Andrew Voss is that they simply placed the white backpack back into the vehicle and called the wrecker to

-15-

tow the Acura away, while at the same time transporting Mr. Smith and the driver of that vehicle to jail.

As a direct result of the conduct of these officers in failing to preserve such evidence, Mr. Smith is now without the ability to present such significant exculpatory evidence in defense of these charges. After all, this is not a case in which anyone can testify that Mr. Smith was ever in actual physical possession of the white backpack or its contents.

Contrary to the findings in the Report and Recommendation the exculpatory nature of such evidence, under the circumstances, should have been readily apparent to the officers, that it is unnecessary for Mr. Smith to prove that the unavailability of this evidence is a result of conduct undertaken in bad faith by these officers or anyone else. Knowing that no one had seen Mr. Smith, a front seat passenger in the Acura vehicle in actual physical possession of the white backpack allegedly found in the rear seat area, and with knowledge that Mr. Smith, at the scene, was proclaiming that he knew nothing about it, how could anyone not know the exculpatory value of such evidence? After all, under these circumstances it should be obvious that given Mr. Smith's assertions of his innocence, the lack of his fingerprints or DNA on the white backpack could certainly be found by any jury to be exculpatory evidence of the charge of possession being asserted against him. Now that evidence cannot be presented to the jury because the prosecution, even after indicting Mr. Smith, did nothing whatsoever to preserve it.

I. The prosecution offered insufficient credible evidence that Mr. Smith was

speeding when operating his motorcycle on October 9, 2018.

  J. The prosecution offered insufficient credible evidence that Detective Hankins could smell marijuana on the person of Mr. Smith after stopping his motorcycle on October 9, 2019.

  The detective who stopped Mr. Smith and his motorcycle on October 9, 2019, Detective Aaron Hankins, said he did so because he claimed the motorcycle was traveling 70 miles per hour on streets where the speed limit was 25 miles per hour. Even then, however, Detective Hankins stated that he did not intend to charge Mr. Smith with speeding. While Detective Hankins admitted that he had seen the motorcycle traveling on the street for less than a mile, that during that short distance the motorcycle had encountered three (3) stop signs, at none of which did Detective Hankins claim the motorcycle failed to stop, and Detective Hankins testified he had no radar with which to determine the speed of the motorcycle. Instead, Detective Hankins stated that he merely estimated the speed of the motorcycle during such a relatively short distance for which he observed it before pulling it over.

  Mr. Smith submits that, without more, such testimony is insufficient to prove that Detective Hankins had probable cause to stop Mr. Smith's motorcycle on October 9, 2018, and objects to the finding to the contrary in the Report and Recommendation.

  Even though Detective Hankins did not know how long Mr. Smith had been operating

-17-

the motorcycle before he observed it on October 9, 2018, and even though he had not observed Mr. Smith smoking anything on this occasion, he claims he smelled the odor of marijuana on Mr. Smith's person after stopping the motorcycle. He even characterized it as a "strong" odor of marijuana. Mr. Smith submits that such testimony is so incredible that it cannot be at all credible. There is simply no reasonable explanation of how one could be expected to smell the odor of such a substance on the person who has been riding a motorcycle.

For these reasons, Mr. Smith submits that there was no credible evidence from which the Report and Recommendation could find that the prosecution had met its burden of proving that Detective Hankins had probable cause to believe that Mr. Smith's backpack contained marijuana, and for which he then performed a warrantless search thereof.

## III. CONCLUSION

WHEREFORE, for the reasons aforesaid Mr. Smith submits that the Court should not accept the recommendations in the Report and Recommendation, and instead should grant each of his motions addressed therein.

/s/Jerry W. Laughlin
Jerry W. Laughlin (BPR#002120)
Counsel for Defendant Anthony Nathan Smith

LAUGHLIN, NUNNALLY, HOOD & CRUM, PC
100 South Main Street
Greeneville, TN 37743
423-639-5183

# CERTIFICATE OF SERVICE

I hereby certify that notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other interested parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

This the 30th day of October, 2020.

/s/Jerry W. Laughlin
Jerry W. Laughlin

L:\Criminal\Smith, Anthony (U.S. vs.) 19-2101\Objections to Report and Recommendations of Magistrate Judge