UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19–CR–96 |
| | ) | |
| ANTHONY NATHAN SMITH | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Objections to the Magistrate Judge's Report and Recommendation ("R&R"). [Doc. 550]. The R&R recommends the denial of two Motions to Suppress and two Motions to Dismiss filed by Defendant. [Doc. 510]. The United States is relying on its previous four responses to the original motions and the R&R itself as its opposition to Defendant's objections. [Doc. 560]. After reviewing Defendant's Objections, the record, and applicable law, the Objections are OVERRULED. The Report and Recommendation, [Doc. 510], is AFFIRMED, ADOPTED, and MODIFIED to be consistent with this Order.

**I. Background**

Defendant does not object to any of the factual findings in the R&R. Defendant challenges the sufficiency of the evidence for meeting the Government's burden of proof but does not argue that any of the facts found by the Magistrate Judge were inaccurate. The Court therefore adopts the Magistrate Judge's findings of fact as if fully set forth herein.

**II. Legal Standard**

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a *de novo* review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). A magistrate judge's recommendation on a motion to suppress evidence is a dispositive issue. *See United States v. Raddatz*, 447 U.S. 667, 677–78 (1980) ("[T]he resolution of a

1

suppression motion can and often does determine the outcome of the case[.]"); *Ford Motor Co. v. U.S. Customs & Border Protection*, No. 06–13346, 2012 WL 162353, at *1 (E.D. Mich. Jan. 19, 2012) (stating that "motions to suppress in criminal cases are considered dispositive under 28 U.S.C. 636(b)(1)(A)"); *United States v. Barclay*, No. 10–20570, 2011 WL 1627072, at *1 (E.D. Mich. Apr. 27, 2011) (stating that "[m]otions to suppress evidence in a criminal case are treated as dispositive motions" (citing 28 U.S.C. § 636(b)(1)(A)). Similarly, a motion to dismiss is a dispositive motion. *See United States v. O'Neal*, No. 3:08–CR–107, 2009 WL 2588719, at *1 (E.D. Tenn. Aug. 19, 2009).

A *de novo* review requires the Court "to give fresh consideration" to the issues before it. *Raddatz*, 447 U.S. at 675 (quotation omitted). In doing so, the Court reaches "the ultimate determination of the matter" through its own judicial discretion. *Id.* at 675–76. After the review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**III.   Motions to Suppress**

Defendant has filed objections to the recommendation that two Motions to Suppress be denied. The First Motion to Suppress involves a stop, detention, and search that occurred on February 7, 2019, [Doc. 327], and the Second Motion to Suppress is in regard to a stop, detention, and search that occurred on October 9, 2018, [Doc. 338].

    1.   First Motion to Suppress

The first motion filed by Defendant is a Motion to Suppress Evidence Obtained in Violation of the United States Constitution. [Doc. 327]. This Motion challenges the "stop, detention[,] and search of vehicle in which he was a passenger by law enforcement officers on

February 7, 2019, without a warrant." [Doc. 550, PageID 1858]. Defendant objects to the denial of his First Motion to Suppress on two grounds. [*Id.* at PageID 1860].

First, he argues that the R&R erred in concluding that the prosecution met its burden of proof showing that "law enforcement had probable cause to believe that a traffic violation was being committed by the driver of the vehicle in which [Defendant] was a passenger on February 7, 2019." [*Id.*]. Second, Defendant objects to the R&R on the basis that the "[t]he prosecution did not introduce sufficient evidence of information from a Title III wiretap about the Acura vehicle in which [Defendant] was a passenger on February 7, 2019, to provide a constitutionally permissible reason for the stop and detention of that vehicle by law enforcement officers." [*Id.* at PageID 1860–61].

### 1. *First Objection to the First Motion to Suppress*

The first objection arguing that the Government failed to meet its burden to begin the traffic stop is overruled because the Government introduced enough evidence to establish that reasonable suspicion existed for the traffic stop. The United States Supreme Court has ruled that "the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)). The level of suspicion that justifies an investigative stop, reasonable suspicion, "is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* The reasonable suspicion standard doesn't require perfection or even require that the officer be correct. *Id.* at 1188 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

3

Case 2:19-cr-00096-JRG-CRW Document 664 Filed 01/20/21 Page 3 of 16 PageID #: 3482

The Supreme Court has determined that an officer has reasonable suspicion that a crime is being committed when a vehicle is being driven by someone who looks like the owner of the vehicle and the owner has a suspended license. *Id.* The Supreme Court stated that the vehicle can be pulled over even though "the registered owner of a vehicle is not always the driver of the vehicle . . . . " *Id*. Even still, the seizure "must be justified at its inception," *id.* at 1191, meaning that while an owner with a suspended license may justify a traffic stop, the reasonable suspicion standard still "takes into account the totality of the circumstances—the whole picture." *Id.* (quoting *Navarette v. California*, 572 U.S. 393 (2014)) (internal quotation marks omitted). The whole picture would consider any differences in appearance between the owner and driver. *Id.* If their appearances were different, this difference could "dispel reasonable suspicion." *Id.*

The Supreme Court's decision in *Kansas v. Glover* shows that Deputy Stevens could make the stop based on the R&R's findings of fact. Deputy Stevens ran the license plate of the vehicle and learned that the owner of the vehicle had a suspended license. [Doc. 510, PageID 1708]. On February 7, 2019, Deputy Stevens believed that the physical description of the driver matched the owner of the vehicle, although he could not remember the physical description of the driver or the owner at the evidentiary hearing, other than that they were both white males. [*Id.*]. While Deputy Stevens didn't remember what the driver or owner of the vehicle looked like at the evidentiary hearing, Defendant didn't raise any evidence of what the driver or owner looked like. [*Id.*].

Although Defendant did not raise any evidence of the owner's appearance, he did bring Deputy Stevens's credibility as a fact witness into question. Deputy Stevens gave contradictory statements about whether he knew to look for the vehicle that Defendant was a passenger in, a blue Acura. [*Id.* at PageID 1707 n.1]. At a Hamilton County General Sessions Court hearing, Deputy Stevens said that he had *not* heard about the blue Acura from the police radio while waiting. [*Id.*].

4

Deputy Stevens contradicted himself at the evidentiary hearing and said that he learned about the blue Acura on the police radio. [*Id.* at PageID 1707]. The R&R acknowledges that Deputy Stevens contradicted himself, but the R&R says, "While this difference and other aspects of Deputy Stevens'[s] testimony make it clear to the Court that Deputy Stevens was not fully candid, his testimony was not so lacking in credibility as to disregard it." [*Id.* at PageID 1707 n.1].

When reviewing the credibility of a witness, "courts are generally reluctant to set aside credibility determinations made by the trier of fact . . . ." *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001); *see also United States v. Close*, No. 3:19–CR–54, 2020 WL 616210, at *5 (E.D. Tenn. Feb. 10, 2020); *United States v. Rose*, No. 3:17–CR–41.1, 2017 WL 4404394, at *2 (E.D. Tenn. Oct. 4, 2017), *aff'd*, No. 18–5279, 2018 WL 7821668 (6th Cir. Aug. 24, 2018). While the Magistrate Judge acknowledged that Deputy Stevens's testimony was less than perfect, she ultimately deemed him a credible witness. [Doc. 510, at PageID 1707 n.1]. The Magistrate Judge was in a much better position to make this credibility determination, and this Court will accept her decision.

Because the Court accepts the credibility decision of the Magistrate Judge, it follows that this objection must be overruled. Deputy Stevens provided enough evidence to support reasonable suspicion to initiate an investigative stop based on the suspicion that someone without a license was driving the blue Acura. Therefore, the Government provided sufficient evidence at the evidentiary hearing.

### 2. *Second Objection to the First Motion to Suppress*

As for the second objection, Defendant takes issue with the mention of a Title III wiretap in the R&R because he says that evidence of the wiretap was not introduced at the evidentiary hearing. [Doc. 550, PageID 1866]. While the R&R mentions the wiretap, the R&R does not appear

5

to rely on the wiretap to justify the traffic stop. Even without facts obtained from a wiretap, Deputy Stevens had reasonable suspicion to stop the vehicle as stated above. Therefore, the objection is overruled.

### *3. Conclusion*

For the reasons stated above the Defendant's objections to the R&R regarding Defendant's First Motion to Suppress are OVERRULED.

### 2. <u>Second Motion to Suppress</u>

Defendant filed a Second Motion to Suppress evidence obtained from a different traffic stop that occurred on October 9, 2018. [Doc. 550, PageID 1859–60]. On October 9, 2018, Defendant was riding a motorcycle, and Detective Aaron Hankins pulled Defendant over for speeding and searched him. [Doc. 510, PageID 1711]. Detective Hankins found methamphetamine in Defendant's backpack. [*Id.* at PageID 1712]. The R&R recommends that the Second Motion to Suppress be denied, and Defendant objected to the R&R on two grounds. [*Id.* at PageID 1723]. In the first objection, Defendant argues that the Government did not provide sufficient evidence that he was speeding. [Doc. 550, PageID 1859–60]. As for the second objection, Defendant argues that there was insufficient evidence that Detective Hankins smelled marijuana. [*Id.* at PageID 1860]. Both objections are overruled because the Government provided enough evidence.

### *1. First Objection to the Second Motion to Suppress*

First, Defendant objects and argues that there was insufficient evidence that he was speeding. [*Id.* at PageID 1859–60]. The Government relies on the testimony of Detective Hankins as evidence. [*Id.* at PageID 1711]. Detective Hankins testified that Defendant was riding "at approximately 70 miles per hour in a 25 per hour zone." [*Id.*]. He was able to estimate the speed based on skills he learned at the police academy. [*Id.*]. Detective Hankins did not confirm the speed

6

with radar. [*Id.*]. He did not know how long Defendant had been riding the motorcycle and was not sure if Defendant ran a set of three stops signs that would have been on Defendant's route. [*Id.*]. Defendant questions how he could have pulled out of a driveway and accelerated to 70 miles per hour without running the stop signs. [*Id.* at PageID 1874].

Defendant argues that Detective Hankins's testimony does not reach the level of probable cause to stop Defendant; he is incorrect. [*Id.*]. An officer can stop an automobile if the officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). The probable cause standard takes the totality of the circumstances into account. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Several courts have ruled that an officer may give lay testimony regarding the speed of a vehicle in normal use, and the officer's testimony can support a finding of probable cause. *United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012) (stating that when "an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential . . . may itself provide sufficient 'indicia of reliability' to support an officer's probable cause determination"); *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011), *cert. denied*, 565 U.S. 905 (affirming probable cause finding that relied on officer's visual estimate of speed based on training from police academy); *State v. Mackinnon*, No. E2012–00594–CCA–R3CD, 2013 WL 2326885, at *10 (Tenn. Crim. App. May 29, 2013) (citing *Blackburn v. Murphy*, 737 S.W.2d 529, 532 (Tenn. 1987)). Considering Detective Hankins testified that Defendant was travelling significantly over the speed limit, his lay testimony without confirmation by radar is sufficient to support a probable cause determination. While there may not be probable cause to say that

7

Defendant was traveling at precisely 70 miles per hour, there is probable cause that he was travelling over 25 miles per hour and that a traffic violation had occurred. Defendant's questioning of how he could have accelerated so quickly or been speeding without running stop signs does not take away the "reasonable ground for belief supported by less than prima facie proof but more than mere suspicion" that a traffic violation occurred. *Blair*, 524 F.3d at 748. Therefore, based on his testimony, Detective Hankins had probable cause to initiate the traffic stop, and Defendant's objection is overruled.

### 2. *Second Objection to the Second Motion to Suppress*

Moving to the next objection, Defendant argues that the smell of marijuana should not be able to justify the search of his backpack. [Doc. 550, PageID 1859–60]. Defendant's objection must be overruled as the Sixth Circuit has ruled that the odor of drugs can support probable cause to search of a vehicle. *United States v. Terrell*, 483 F. App'x 161, 165 (6th Cir. 2012). A motorcycle is a vehicle under the automobile exception to the warrant requirement, which includes the search of containers. *United States v. Stubblefield*, 682 F.3d 502, 507 (6th Cir. 2012); *see United States v. Adkins*, No. 2:07–CR–110, 2008 WL 2368138, at *11 (E.D. Tenn. June 6, 2008), *aff'd*, 429 F. App'x 471 (6th Cir. 2011). Defendant has not raised any evidence contradicting Detective Hankins's testimony that he smelled marijuana during the traffic stop, and the objection must be overruled.

### 3. *Conclusion*

In conclusion, the Government introduced sufficient evidence that Defendant was speeding and provided justification to search Defendant's motorcycle; therefore, his objections to the R&R regarding the Second Motion to Suppress are OVERRULED.

8
Case 2:19-cr-00096-JRG-CRW   Document 664   Filed 01/20/21   Page 8 of 16   PageID #: 3487

### IV.     Motions to Dismiss

Along with his motions to suppress, Defendant filed two motions to dismiss. Both Motions to Dismiss involve the destruction of evidence from the February 7, 2019, stop and vehicle search. The First Motion to Dismiss is about the loss of dash cam footage and audio recording from the stop. [Doc. 329]. The Second Motion to Dismiss involves the loss of the vehicle and backpack that that were searched. [Doc. 336]. The Magistrate Judge recommended that the motions be denied, and Defendant filed objections to both recommendations. [Doc. 550].

        1.     <u>First Motion to Dismiss</u>

Defendant makes four objections to the R&R regarding his First Motion to Dismiss. [Doc. 550, PageID 1866–67]. First, Defendant objects because the recordings were lost after Deputy Stevens said under oath that he would preserve them and provided no explanation why he did not. [*Id.* at PageID 1866]. Second, Defendant argues that "the exculpatory value of these recordings would have been readily apparent to the officers." [*Id.*]. Third, Defendant says that "no credible testimony or other admissible evidence [was] submitted by the prosecution at the evidentiary hearing in this case as to why such video and audio recordings could not be provided to [Defendant's] counsel." [*Id.* at PageID 1867]. Fourth, Defendant objects and argues that the video and audio were destroyed in bad faith because Deputy Stevens said that he "would preserve those recordings and then he did nothing to do so while the recordings were apparently destroyed." [*Id.*]. The Court reads the first and fourth objects to essentially be the same.

Loss of evidence falls into two categories, evidence that is materially exculpatory and evidence that is potentially exculpatory. For the first category, "[t]he government violates a defendant's due process rights when it does not preserve material exculpatory evidence." *United States v. Spalding*, 438 F. App'x 464, 466 (6th Cir. 2011) (citing *California v. Trombetta,* 467 U.S.

469, 488–89; *United States v. Wright,* 260 F.3d 568, 570 (6th Cir. 2001)). If evidence is "materially exculpatory," the loss of evidence "violates the defendant's due process rights, regardless of whether the government acted in bad faith." *Id.* "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Not only must the evidence be material, the exculpatory value of the evidence must be apparent at the time of the destruction of evidence. *Trombetta*, 467 U.S. at 489. If the evidence was material and the materiality of the evidence was evident at the time of destruction, then a third requirement must be met—the defense must be unable to obtain comparable evidence. *Id.* If all these requirements are met, the lost evidence meets the "constitutional materiality" test, and a defendant's due process rights have been violated. *Id.*

On the other hand, if the evidence wasn't materially exculpatory, and instead was only potentially exculpatory, "the defendant must show that the government acted in bad faith" when "failing to preserve potential useful evidence." *Spalding*, 438 F. App'x at 466 (citing *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988)). When evidence is potentially exculpatory, "[n]egligence, even gross negligence, on the part of the government does not constitute bad faith." *Id.* Bad faith can be shown by establishing that the Government was trying to gain a tactical advantage. *Youngblood*, 488 U.S. at 57.

With the law recited, the Court, for simplicity, will address the objections out of order.

### 1. Second Objection to the First Motion to Dismiss

The second objection will be addressed first because whether the exculpatory value of the video and audio was materially exculpatory and whether that value was readily apparent will affect

10

the analysis of the first, third, and fourth objections. In the second objection to the First Motion to Suppress, Defendant argues that the recordings' exculpatory value should have been readily apparent to the officers because the recordings would show that Defendant said that he had no knowledge of the methamphetamine in the vehicle. [Doc. 550, PageID 1869]. This argument focuses on one part of the constitutional materiality test.

Even if Defendant was correct about the exculpatory value of the evidence being readily apparent, he would also need to show that it would create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. It is questionable whether the recordings are exculpatory at all considering it is video and audio evidence of Defendant at the scene of the crime. Whether the recordings would affect the outcome of the trial is put in more doubt because Officer Voss readily admitted that Defendant denied knowledge of the methamphetamine in the vehicle. [Doc. 510, PageID 1717]. With Officer Voss's admission, the evidence likely would not lead to a different result if this case goes to trial. Because the evidence's exculpatory value is in question now, it certainly can't be said that the value of the evidence was readily apparent when it was lost. The audio and video recordings are potentially exculpatory evidence, and the objection is overruled.

### 2. *First, Third, and Fourth Objections to the First Motion to Dismiss*

Defendant's first, third, and fourth objection to the First Motion to Dismiss challenges the reasons that the recordings were not preserved. [Doc. 550, PageID 1866–67]. The first objection argues that Officer Stevens should have had to explain why he did not preserve the recordings when he said that he would. [*Id.* at PageID 1866]. Next, the third objection states that no credible testimony or evidence was provided explaining why the recordings were lost. [*Id.* at PageID 1867].

11

And the fourth objection argues that the recordings were destroyed in bad faith considering Officer Stevens said that he would preserve them. [*Id.*].

As discussed with the second objection, the recordings were not constitutionally material evidence. Therefore, they are "potentially exculpatory." *See Spalding*, 438 F. App'x at 466. When evidence is potentially exculpatory, a defendant must show that the Government acted in bad faith. *Id.* Defendant has failed to meet his burden. Defendant has provided no proof that the evidence was destroyed in bad faith.

While Deputy Stevens's failure to preserve the evidence after Defendant, through counsel, asked him to is a serious oversight, nothing in the record indicates that it was done in bad faith or to gain a tactical advantage. *See Youngblood*, 488 U.S. at 57. If what Defendant alleges to be on the audio and video recordings is accurate, then there is no obvious tactical advantage gained by losing the recordings.

Although Defendant has the burden to show bad faith, he challenges the Government's explanation for losing the evidence. Deputy Stevens testified that the recordings were lost in a server crash in January 2020, and the Government filed a statement from the Hamilton County Sheriff's Office that contains more information about the server crash. [Doc. 453]. Defendant argues that Deputy Stevens testimony should not be considered because it was made without first-hand knowledge of what occurred, and Defendant argues that the statement provided by the Government is unsigned and unauthenticated. [Doc. 550, PageID 1868]. Defendant also argues that the recordings should have been turned over long before the server crash because the discovery deadline for this case was in November 2019. [*Id.* at Page ID 1869].

Defendant's arguments may suggest that the Government and the Hamilton County Sheriff's Office were negligent or even grossly negligent, but Defendant's arguments do not

12

amount to bad faith. *Spalding*, 438 F. App'x at 466. If the Government had the burden on this issue, Defendant's claims and arguments would be that much stronger, but Defendant bears the burden, and these facts do not show that the evidence was destroyed in bad faith.

Considering the recordings were potentially exculpatory evidence, the burden was on Defendant to show that the Government acted in bad faith. He failed to do so, and the first, third, and fourth objections to the First Motion to Suppress are overruled.

### 3. *Conclusion*

In conclusion, the lost recordings were potentially exculpatory evidence, not materially exculpatory evidence. Being potentially exculpatory, Defendant was required to show that the evidence was lost because of bad faith. Defendant failed to do so; therefore, his objections as to the First Motion to Suppress are OVERRULED.

### 2. Second Motion to Dismiss

The last set of objections are two objections to the R&R's recommendation to deny Defendant's Second Motion to Dismiss. Like the First Motion to Dismiss, the Second Motion to Dismiss is about the loss of evidence from the February 7, 2019, traffic stop—a blue Acura and a white backpack containing methamphetamine. [Doc. 336]. Defendant's first objection posits that the Government did not provide any evidence explaining why the blue Acura and the white backpack were not preserved. [Doc. 550, PageID 1871]. Second, Defendant argues that the exculpatory value of the white backpack, the blue Acura, and the items inside them should have been readily apparent. [*Id.* at PageID 1871–72]. Like the previous set of objections, these objections are better addressed out of order.

13

*1. Second Objection to the Second Motion to Dismiss*

In the second objection, Defendant argues that the exculpatory value of the backpack and Acura were readily apparent because the clutter in the vehicle would corroborate Defendant's claim that he had no knowledge of the white backpack in the car. [*Id.* at PageID 1872]. Defendant also claims in the second objection that fingerprinting and DNA testing of the white backpack and items inside it could have shown that he was not in possession of the white backpack. [*Id.*].

Focusing on whether the officers knew that the blue Acura and white backpack had exculpatory value is one part of the constitutional materiality test. Another part of the test, as stated above, states that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. If the evidence is not material, then the evidence's exculpatory value is in question, making it impossible to say that exculpatory value was readily apparent when it was lost. *See Trombetta*, 467 U.S. at 489.

The blue Acura is not materially exculpatory evidence. Defendant argues that the messy condition of the blue Acura could show that Defendant had no knowledge that the white backpack was in the backseat. [Doc. 500, PageID 1872]. The messy backseat of the vehicle is unlikely to affect a trial and the lack of this evidence does not create a reasonable probability of undermining the confidence in a trial outcome. Because the blue Acura would be unlikely to affect the outcome of a trial, deciding whether the exculpatory value of the evidence—almost none— were known to the officers before the vehicle was towed does not need to be addressed.

Similarly, the white backpack is not materially exculpatory. First and foremost, Defendant's argument relies on the idea that a jury would not convict him if his fingerprints and

14

DNA were not on the backpack or on an item in the backpack. [*Id.*]. The Government argues that Defendant could be convicted of constructive possession even without ever touching the backpack or anything in it. [*See* Doc. 510, PageID 1720]. The Government's argument that the outcome of the trial would not be any different is persuasive.

But, even assuming *arguendo* that the white backpack and its contents could have made a difference in the trial, Defendant's argument still fails because the officers indicated on the record that they did not know of any exculpatory value of the backpack or its contents when they put it back in the blue Acura before the Acura was towed. At the evidentiary hearing, Officer Voss, the officer who put the backpack in the Acura before it was towed, testified that to his knowledge the backpack could not be tested for fingerprinting and DNA is not usually collected in those types of situations. [Doc. 610, PageID 2346]. When backpack was put in the Acura for towing, the exculpatory value of the backpack and its contents for fingerprinting and DNA analysis were not known to the police officers, meaning that their loss does not violate Defendant's due process rights. *Trombetta*, 467 U.S. at 489.

The blue Acura and white backpack are not materially exculpatory. Defendant has failed to show that the evidence has exculpatory value now, let alone that the officers knew of their value before they were lost. Because the evidence is not materially exculpatory, the underpinnings of his argument, that the evidence's value was known in 2019, lies on a faulty foundation. With that, the second objection is overruled.

### 2. *First Objection to the Second Motion to Dismiss*

Having determined that the Acura, backpack, and their contents are not materially exculpatory, Defendant's first objection must be overruled. Because the items were not materially exculpatory and only potentially exculpatory, Defendant must show that the officers acted in bad

15

faith. This contradicts the premise of the objection—that the Government did not provide evidence regarding why the evidence was not preserved. The Government had no obligation to present evidence. Therefore, the objection must be overruled.

### *3. Conclusion*

Because the Defendant has not established that the Acura, backpack, and their contents are material exculpatory evidence, his objections must be overruled.

## V. Conclusion

For the reasons stated above, Defendant's Objections to the Magistrate Judge's Report and Recommendation, [Doc. 510], are OVERRULED. The Report and Recommendation, [Doc. 510], is AFFIRMED, ADOPTED, and MODIFIED to be consistent with this Order.

So ordered.

ENTER:

                                                s/J. RONNIE GREER
                                       UNITED STATES DISTRICT JUDGE